UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY J. HAMILTON<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | No.  2:15-cv-2016-KJN<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from June 3, 2012, her alleged disability onset date, through the date of the final administrative decision. (ECF No. 17.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 18.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 19.)

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 8, 9.)

After carefully considering the parties' written briefing, the court's record, and the applicable law, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the final decision of the Commissioner.

I.   BACKGROUND

Plaintiff was born on September 17, 1961; has a high school education along with certification as a nursing assistant; is able to communicate in English; and previously worked primarily as an in-home caregiver.  (Administrative Transcript ("AT") 23, 43-44, 97-98, 236, 238.)[2]  On September 27, 2012, and December 13, 2012, plaintiff applied for DIB and SSI, respectively, alleging that her disability began on June 3, 2012, and that she was disabled primarily due to chronic pancreatitis, hepatitis C, diabetes, high blood pressure, and chronic leg pain.  (AT 12, 97-98, 189, 192, 237.)  After plaintiff's application was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on September 23, 2014, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified.  (AT 12, 38-72.)  The ALJ subsequently issued a decision dated December 10, 2014, determining that plaintiff had not been under a disability, as defined in the Act, from June 3, 2012, plaintiff's alleged disability onset date, through the date of the ALJ's decision.  (AT 12-24.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on July 28, 2015.  (AT 1-7.)  Plaintiff then filed this action in federal district court on September 23, 2015, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.   ISSUES PRESENTED

On appeal, plaintiff raises the following issues:  (1) whether the ALJ erroneously discounted the opinion of the consultative examining psychiatrist; and (2) whether the ALJ improperly relied on the VE's testimony at step five.

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

III.     LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.     DISCUSSION

A.     Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3]  As an initial matter, the ALJ determined that plaintiff

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing her past relevant work?  If so, the

met the insured status requirements of the Act for purposes of DIB through September 30, 2016. (AT 14.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since June 3, 2012, plaintiff's alleged disability onset date. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments: diabetes mellitus with neuropathy, left knee degenerative joint disease, hepatitis C, pancreatitis, hypertension, affective disorder, and alcohol dependence in remission. (AT 14-15.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 15.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the Residual Functional Capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant cannot climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, and occasionally balance, stoop, crouch, kneel, and crawl. The claimant must avoid concentrated exposure to fumes, odors, dust, and gasses. The claimant must avoid concentrated exposure to poorly ventilated areas. The claimant's work is limited to simple, as defined in the Dictionary of Occupational Titles (DOT) as SVP levels 1 and 2, routine and repetitive tasks. Her work is limited to occasional changes in the work setting, and occasional interaction with the general public, coworkers, and supervisors. The claimant would require the use of a cane or a walker for ambulation.

(AT 16-17.)

At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. (AT 23.) However, at step five, the ALJ found that, in light of plaintiff's age, education,

---

claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

1  work experience, and RFC, and based on the VE's testimony, there were jobs that existed in
2  significant numbers in the national economy that plaintiff could perform.  (AT 23-24.)  Thus, the
3  ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from June 3,
4  2012, plaintiff's alleged disability onset date, through the date of the ALJ's decision.  (AT 24.)

      B.      <u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

*Whether the ALJ erroneously discounted the opinion of the consultative examining psychiatrist[4]*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion.  Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Id. at 830.  The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional.  Id. at 831.

On June 7, 2013, plaintiff was evaluated by consultative examining psychiatrist, Dr. Antoinette Acenas.  (AT 366-69.)  Dr. Acenas did not review any of plaintiff's records, other than plaintiff's disability report.  (AT 366.)  Plaintiff informed Dr. Acenas that she suffered from paranoia that people were "out to get her" and auditory hallucinations, including mumbling

---

[4] On appeal, plaintiff does not challenge the ALJ's evaluation of the evidence that relates to plaintiff's physical limitations.  Plaintiff's briefing focuses solely on the ALJ's evaluation of the evidence concerning plaintiff's mental limitations.

5

voices that were trying to hurt her. (Id.) After performing a mental status examination, Dr. Acenas diagnosed plaintiff with chronic paranoid schizophrenia, and opined that plaintiff could manage her funds, had basic mathematical skills, and could perform simple and repetitive tasks, but could have problems accepting instructions from supervisors due to her auditory hallucinations and paranoid thinking. (AT 368-69.) Dr. Acenas further opined that plaintiff may not be able to perform work on a consistent basis, maintain regular attendance, finish a normal workweek, or deal with the usual stress encountered in a competitive workplace. (AT 369.)

In this case, the ALJ accepted Dr. Acenas's assessment that plaintiff was capable of performing simple and repetitive tasks, but rejected the remainder of Dr. Acenas's severe limitations. (AT 22.) Because Dr. Acenas's opinion was contradicted by other opinions in the record, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Acenas's opinion. The court concludes that the ALJ properly discharged his obligation in that regard.

The ALJ reasonably found that Dr. Acenas's severe limitations were inconsistent with the relatively mild findings of mental status examinations performed by plaintiff's treating psychiatrist at San Joaquin County Behavioral Health Services, Dr. Saba Rizvi. (AT 22.) At her initial intake assessment by a marriage and family therapist intern, Jane Sanchez, plaintiff complained of debilitating mental symptoms, but Ms. Sanchez nonetheless noted that plaintiff's prognosis was good, and that plaintiff was on time and cooperative. (AT 375-80.) Subsequent visits with plaintiff's treating psychiatrist, Dr. Rizvi, largely confirmed Ms. Sanchez's prognosis and assessment. For example, on October 25, 2013, Dr. Rizvi noted that plaintiff had a depressed mood and anxious affect, but had excellent hygiene and grooming; was very verbal, cooperative, and organized with good eye contact; had no suicidal or homicidal ideations; and had fair insight and judgment. (AT 271, 416.) On November 26, 2013, Dr. Rizvi found that plaintiff had excellent grooming and hygiene, was cooperative and pleasant, had good eye contact, was very verbal, was not depressed and not irritable with a slightly elevated affect, was organized, had no suicidal or homicidal ideations, and had fair insight and judgment. (AT 273, 414.) Thereafter, on December 23, 2013, Dr. Rizvi again made virtually identical findings, except noting that

plaintiff's mood was "trying to change to the positive" and that her affect was bright. (AT 269, 412.)

The ALJ also rationally determined that Dr. Acenas's opinion was largely based on plaintiff's subjective complaints, which the ALJ found not fully credible. (AT 22.) See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Because the present record supports the ALJ in discounting Tonapetyan's credibility, as discussed above, he was free to disregard Dr. Ngaw's opinion, which was premised on her subjective complaints.").

As an initial matter, Dr. Acenas's opinion itself provides little explanation by reference to any clinical findings for the severe limitations assessed related to accepting instructions from supervisors, work attendance, and work stress. Upon her mental status examination, Dr. Acenas found that plaintiff had a depressed mood with some memory impairment, but otherwise was fully oriented, had good grooming and hygiene (except for poor dentition), was friendly and cooperative, had spontaneous speech, was coherent and able to present a cohesive history, and had normal judgment and insight. (AT 367-68.) Thus, it was not unreasonable for the ALJ to conclude that Dr. Acenas relied heavily on plaintiff's subjective complaints in formulating her severe limitations.

Moreover, the ALJ properly discounted plaintiff's subjective complaints of extreme paranoia and auditory hallucinations, at least to the extent that they were alleged to be present at a disabling level. As the Commissioner points out, plaintiff does not challenge the ALJ's assessment of plaintiff's credibility on appeal. In any event, the ALJ provided several specific, clear, and convincing reasons for discounting plaintiff's credibility. As the ALJ observed, although plaintiff reported having visual hallucinations since she was 8 years old, and auditory hallucinations since 2009, plaintiff nevertheless worked for years until June 2012, plausibly suggesting that such mental symptoms were not disabling. (AT 20, 22, 375-76.) Furthermore, the ALJ noted that plaintiff had a limited mental health treatment record and was not always compliant with prescribed treatment, which suggested that her mental impairments were not as disabling as alleged. (AT 20.) After plaintiff's first visit at San Joaquin County Behavioral Health Services in May 2013, she did not return to that clinic until October 2013, with no further

visits after December 2013, even though the record was left open at the September 2014 administrative hearing to allow plaintiff's attorney to submit any additional treatment records. (AT 19-20, 72.)  Notably, at the administrative hearing, plaintiff testified that she had not seen her treating psychiatrist for more than six months, because she did not like her.  (AT 20, 53.)  She also testified that she had stopped taking the medication prescribed by her psychiatrist, because it made her feel strange, and "the main thing she was giving them to me for sleeping, and my primary doctor gave me something that helps me sleep, so I didn't think I needed to take them anymore."  (AT 20, 53-54.)

Therefore, the ALJ appropriately discounted Dr. Acenas's opinion on the basis that it heavily relied on plaintiff's subjective complaints, which were found not fully credible.

Finally, the ALJ also properly relied on the opinions of the state agency psychologists. (AT 21-22.)  On July 3, 2013, state agency psychologist Dr. Heather Barrons reviewed plaintiff's records and opined that plaintiff was capable of understanding and remembering simple instructions/procedures and workplace locations; maintaining concentration, pace, and persistence for simple routines throughout a normal workday or workweek; interacting with co-workers, supervisors, and the public; and adapting to a work environment, recognizing hazards, traveling, and setting goals independently within the above-outlined framework.  (AT 82.)  Thereafter, on January 22, 2014, state agency psychologist Dr. Patrice Solomon reviewed plaintiff's records and affirmed Dr. Barrons's assessment.  (AT 108.)  Because the opinions of Drs. Barrons and Solomon are more consistent with the relatively mild findings of the mental status examinations performed by plaintiff's treating psychiatrist, as well as plaintiff's limited mental health treatment record, the ALJ properly relied on those opinions to discount the opinion of Dr. Acenas.  See Tonapetyan, 242 F.3d at 1149 ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").  Nevertheless, the court also notes that the ALJ, giving plaintiff the benefit of the doubt, imposed additional mental limitations to account for plaintiff's impaired memory, reported auditory hallucinations, and some history of interpersonal conflicts by

1   limiting plaintiff to only occasional social contact and only occasional changes in the work
2   setting.  (AT 20-21.)
3          Accordingly, the ALJ did not err in his evaluation of Dr. Acenas's opinion.
4          *Whether the ALJ improperly relied on the VE's testimony at step five*
5          At step five, the ALJ determined, based on the VE's testimony, that there were jobs that
6   existed in significant numbers in the national economy that plaintiff could perform.  (AT 23-24.)
7   In particular, the VE testified that plaintiff could perform the alternative representative
8   occupations of packer, office helper, and electronics worker, even if plaintiff required the use of
9   either a cane or a walker for ambulation.  (AT 24, 69-70.)  On appeal before this court, plaintiff
10  contends that the ALJ impermissibly relied on the VE's testimony, because the VE's testimony
11  purportedly presented a "clear conflict" with the Dictionary of Occupational Titles ("DOT").
12         As an initial matter, plaintiff failed to raise this evidentiary issue before either the ALJ or
13  the Appeals Council.  The Ninth Circuit has held that, unless manifest injustice would result,
14  claimants must generally "raise all issues and evidence at their administrative hearings in order to
15  preserve them on appeal," at least when claimants are represented by counsel.  Meanel v. Apfel,
16  172 F.3d 1111, 1115 (9th Cir. 1999).  This is because the ALJ as the fact-finder, rather than a
17  federal court reviewing under a substantial evidence standard of review, is the appropriate person
18  to resolve factual and evidentiary inconsistencies, including alleged conflicts with the DOT.
19  Indeed, at the administrative hearing, the vocational expert is subject to cross-examination by
20  plaintiff's attorney, and is on hand to address any perceived inconsistencies between the expert's
21  own testimony and the DOT.  To generally permit claimants to later second-guess a vocational
22  expert's testimony in their federal court appeals, when the claimants failed to challenge such
23  testimony in the administrative proceedings below, would inject a significant amount of
24  inefficiency into an already-delayed claim resolution process, and also impermissibly alter the
25  scope of judicial review of Social Security claims.
26         In this case, plaintiff, who was represented by an attorney, did not object to the VE's
27  qualifications or challenge the VE's testimony at the hearing.  (AT 67.)  Indeed, plaintiff's
28  attorney declined to even question the VE, let alone inquire regarding any potential inconsistency

1    with the DOT.  (AT 71.)  As such, the issue is waived.

2    Moreover, no manifest injustice would result from the waiver here.  Although plaintiff's counsel did not question the VE, the ALJ properly discharged his responsibilities by (a) specifically confirming with the VE that the use of a cane or walker for ambulation would not affect the number of jobs available; and (b) twice confirming with the VE that the VE's testimony was consistent with the DOT.  (AT 66, 71.)  See Wentz v. Comm'r of Soc. Sec. Admin., 401 Fed. App'x 189, 191 (9th Cir. Oct. 26, 2010) (unpublished) (holding that ALJ's reliance on VE's testimony was proper where ALJ asked the VE to identify any conflicts with the DOT, the VE identified none, and the claimant's attorney did not challenge that testimony).  Furthermore, even if plaintiff's counsel were somehow unable to discern the alleged "clear conflict" at the time of the hearing, plaintiff's counsel had an opportunity, after consideration of the VE's testimony and further reflection on the record, to raise any such issue before the Appeals Council.  Nevertheless, plaintiff's counsel failed to put forth any argument regarding the VE's testimony in plaintiff's brief to the Appeals Council.  (AT 266-68.)

Even assuming that plaintiff's argument regarding the VE testimony were not waived, it is unpersuasive on the merits.  Plaintiff argues that the VE's testimony presents a "clear conflict" with the DOT in light of SSR 96-9p.  However, that Social Security Ruling addresses the implications of a RFC for less than a full range of *sedentary work*, whereas plaintiff was found capable of performing a reduced range of *light work*, which has a much larger occupational base.  As such, the applicability of SSR 96-9p is doubtful at best.  But even if it applies, SSR 96-9p states that, in the case of a medically-required hand-held assistive device, "[t]he adjudicator must always consider the particular facts of a case…In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work."  SSR 96-9p, at *7.  That is exactly what the ALJ did in this case, and no more was required.

V.   CONCLUSION

In sum, the court finds that the ALJ's decision was free from prejudicial legal error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY

ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is GRANTED.

3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: August 25, 2016

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE